Filed 7/18/22  P. v. Macias CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078868 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE400946) |
| JESUS DANIEL MACIAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Heather Lee Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Jesus Daniel Macias of attempted robbery of victim S.A. (Pen. Code,[1] §§ 211, 664; count 2) and exhibiting a deadly or dangerous

_____

[1]     Undesignated statutory references are to the Penal Code.

weapon other than a firearm, a misdemeanor (§ 417, subd. (a)(1); count 3). It found true allegations that Macias personally used a deadly and dangerous weapon—a knife—during the commission of count 2 within the meaning of sections 12022, subdivision (b)(1), and 1192.7, subdivision (c)(23). The jury acquitted Macias of assault with a deadly weapon (§ 245, subd. (a)(1); count 1), and the lesser included offense of simple assault. The court suspended imposition of sentence on count 2 and placed Macias on a two-year grant of formal probation, including 365 days in county jail as well as various other terms and conditions. It then denied probation as to count 3 and sentenced Macias to 364 days in county jail. It stayed imposition of all fines and fees on the ground Macias had no ability to pay them.

Macias contends we must reverse his attempted robbery conviction because there is insufficient evidence he either (1) specifically intended to commit robbery or (2) committed an overt act—a direct but ineffectual step—towards its commission. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2020, S.A. parked his truck in a liquor store parking lot after the end of his work day. He was sitting in the driver's seat with the windows rolled down when a man, later identified at trial as Macias, walked up and demanded S.A. give him money. S.A., who observed the man looked dirty and appeared to be under the influence of something, said no. Macias put his hand in his pocket and told S.A. that if S.A. did not give him money, he was going to cut S.A.'s tires. Macias then walked behind S.A.'s truck, so S.A. exited the vehicle to confront him and saw Macias had a seven- or eight-inch long knife in his hand. S.A. feared for his own safety. Macias came toward S.A., who told Macias to calm down or S.A. would call the police. Macias got much more upset and came closer to S.A. with the knife in his closed fist

2

while making strange faces.  According to S.A., "[Macias] was already threatening me, and it was right then when I called the police."  S.A. testified Macias got about two feet away from him before S.A. called police.  Macias left while S.A. called police.

Police responding to the 911 call later found Macias less than one mile from the liquor store.  Macias matched the suspect's description.  Officers handcuffed him without incident, and one officer pulled a folding knife from the front right pocket of Macias's shorts.  The knife had a tab for quickly flipping the knife out, as well as a clip on its handle for securing it to a pocket or waistband.

## DISCUSSION

### I. *Standard of Review*

The applicable standard is well-settled.  " 'We " ' "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " ' " (*People v. Parker* (2022) 13 Cal.5th 1, 29.)  "We consider ' "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.]  '[A] reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.)  When considering the sufficiency of the evidence, we do not reweigh the evidence or question witness credibility as long as the witness's testimony is not inherently improbable.  (*People v. Reed* (2018) 4 Cal.5th 989, 1006.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Due to the deference we must give to the trier of fact, an appellant challenging the sufficiency of the evidence "bears an enormous burden." (*People v. Hunter* (2017) 15 Cal.App.5th 163, 184.)

## II. *Elements of Robbery and Attempted Robbery*

In general, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Though it is not always clear when mere preparation ends and attempt begins, the California Supreme Court has "long recognized that '[w]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt.' " (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8; see also *People v. Garton* (2018) 4 Cal.5th 485, 510.)

"Robbery is defined as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' [Citation.] Robbery requires the 'specific intent to permanently deprive' the victim of his or her property." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 489.) " 'An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 24; see also *Mora and Rangel*, at p. 489; *People v. Sanchez* (2016) 63 Cal.4th 411, 470; *People v. Watkins* (2012) 55 Cal.4th 999, 1018; *People v Medina* (2007) 41 Cal.4th 685, 694.) "[N]either a completed theft [citation] nor a completed assault [citation], is required for attempted robbery." (*Medina*, at p. 694; *Sanchez*, at p. 470.) To commit an attempt, a

4

defendant need not commit an element of the underlying offense. (*Medina*, at p. 694.)

### III. *Analysis*

Macias contends there is insufficient evidence from which a rational juror could find beyond a reasonable doubt he had the specific intent to commit robbery, or that he took a direct but ineffectual step toward a robbery's commission. We address these contentions in turn.

### A. *Intent to Permanently Deprive S.A. of Property*

With respect to the element of intent, Macias maintains the evidence shows only that he intended to ask or "pester[ ]" patrons coming in and out of the liquor store for money. He points out he did not verbally threaten to harm S.A., nor did he show S.A. the knife in response to S.A.'s refusal to comply with his request. Rather, Macias states the evidence shows he merely said he would cut S.A.'s tires if S.A. did not give him money, and the knife did not come out of his pants and he did not wield it in the air until S.A. left his truck to confront him. Macias points out he never again demanded that S.A. give him money. Macias argues: "While a defendant's actions can constitute sufficient circumstantial evidence of a defendant's specific intent to commit robbery [citation], appellant's actions do not clearly establish that he intended to commit robbery when he asked [S.]A. to give him some money outside of the . . . [l]iquor store. Appellant's actions did not evidence an intent to commit robbery, i.e., the taking of [S.]A.'s money by force or fear."

The People counter that Macias's demands to S.A. and threats to S.A.'s property evidenced an intent to take S.A.'s money. They argue "[t]he most reasonable inference is that when [Macias] expressly threatened to destroy [S.A.'s] personal property if he did not give him money, he did so with the

intent that his threat of force to [S.A.'s] property would cause [S.A.] to relinquish his money to [Macias]."

We agree with the People. That Macias demanded money from S.A. while at the same time making a threat to cut S.A.'s truck tires permitted the jury to conclude Macias had the specific intent to take Macias's money and thereby permanently deprive him of it. As the People point out, intent to steal is often proved by circumstantial evidence (*People v. Abilez* (2007) 41 Cal.4th 472, 508), and we apply the same review standard in cases involving such evidence. (*People v. Watkins*, *supra*, 55 Cal.4th at p. 1020; *People v. Kerley* (2018) 23 Cal.App.5th 513.) Here, it was sufficient that Macias focused his intent on S.A. specifically, not patrons generally, and demanded money from him while possessing a knife and threatening to damage S.A.'s property. (Accord, *People v. Mora and Rangel*, *supra*, 5 Cal.5th at p. 489 [evidence was sufficient to show intent to permanently deprive a person of their property when defendants "asked the victims for their wallets"; "as [defendant] acknowledges, this evidence alone is sufficient to convict a person of attempted robbery 'in the appropriate case' "].) The evidence did not need to show S.A. actually saw Macias's knife or that Macias succeeded in actually obtaining S.A.'s money, where the record shows Macias removed his knife and moved to the rear of S.A.'s truck, evidence from which a jury could infer he sought to make good on his threat in an effort to either force S.A. to hand over his money or prevent S.A. from leaving. (*Id*. at p. 490 [that wallets were not taken from the victims did not matter where the evidence showed the defendants made their demand and permitted the victims to take steps acquiescing to them].) The jury based its verdict upon all of the evidence, and its conclusion that Macias possessed the intent to rob S.A. was amply supported by these facts.

6

Macias's arguments to the contrary ask us to draw different inferences from the evidence, which we cannot do. "[W]e are not free to reform the verdict simply because another theory is plausible. [Citation.] Whether a reasonable trier of fact could reach a different conclusion based upon the same facts does not mean the verdict is not supported by sufficient evidence." (*People v. Mora and Rangel, supra*, 5 Cal.5th at p. 490.)

B. *Overt Act*

"The overt act element of attempt requires conduct that goes beyond 'mere preparation' and 'show[s] that [defendant] is putting his or her plan into action.' " (*People v. Watkins, supra*, 55 Cal.4th at p. 1021.) The overt act " 'need not, however, be the last proximate or ultimate step toward commission of the crime.' " (*People v. Sanchez, supra*, 63 Cal.4th at p. 470, quoting *People v. Bonner* (2000) 80 Cal.App.4th 759, 764.) Further, "[w]here the intent to commit the crime is clearly shown, an act done toward the commission of the crime may be sufficient for an attempt even though that same act would be insufficient if the intent is not as clearly shown." (*Bonner*, at p. 764.)

According to Macias, the record lacks substantial evidence of an overt act, since it does not establish he committed a sufficient step toward the commission of a robbery. He maintains he "never voiced any words from which one could reasonably infer an intent to rob [S.]A."; "there was no verbal threat to harm [S.]A. if [S.A.] did not give [Macias] money"; Macias did not "come up to [S.]A.'s pick-up truck with his knife in his hand when he asked [S.]A. for money"; and "there was no evidence that [Macias] was wielding his pocket knife when he said he was going to 'poke' [S.]A.'s tires if [S.]A. did not give [him] any money." Macias argues that his dirty clothing and disheveled appearance, coupled with him asking for money from patrons of the liquor

store, suggests he was homeless; he claims it is "not uncommon" to see a homeless person on the street carrying a pocket knife clipped to his or her waistband. He says that while there is evidence he held his open knife in his fist when he approached S.A. making strange faces, these acts occurred after he demanded money and after S.A. left his truck, and he did not demand any money while doing so.

Macias also points out that after S.A. left his vehicle, S.A. angrily confronted him, and posits he "could have been approaching [S.]A. while holding his pocket knife out in front of him, because he was trying to tell [S.]A. to back away from him." He maintains this conclusion is supported by the fact he was no longer exhibiting the knife by the time S.A. had retrieved his phone from inside his truck. Macias argues the facts here are different from those in *People v. Anderson* (1934) 1 Cal.2d 687, in which the court found a defendant committed sufficient acts to constitute an attempted robbery by concealing a gun on his person, walking into a theater entrance, pulling out the gun and preparing to put it in a ticket office cage, when it went off and killed a person there. (*Id*. at pp. 689-690.)

The People assert that Macias committed an overt act by arming himself with a knife and making threats while approaching S.A. They correctly point out that it is not necessary that the People prove the crime progressed to the use of force or fear to constitute an attempt. (See *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862 [while force or fear must be proved in order to establish a conviction for robbery, "[i]t is not necessary . . . for this element to be reflected in the overt act of an attempted robbery if the crime has not progressed to that point"].)

We agree there is sufficient evidence of an overt act toward completing Macias's goal of depriving S.A. of his money. Macias did not merely arm

8

himself or take other acts constituting "mere preparation." (*People v. Watkins, supra,* 55 Cal.4th at p. 1021.) He took further steps by approaching S.A. and demanding money, threatening to use his knife to cut S.A.'s truck tires. These acts represented " ' "some appreciable fragment of the crime." ' " (*Ibid.*; see also *People v. Moran* (1912) 18 Cal.App. 209 [defendant's act of pushing open a door of a saloon, thrusting his head inside, then fleeing after seeing a crowd of men inside while possessing a loaded gun was a sufficient overt act for attempted robbery]; *People v. Bonner, supra,* 80 Cal.App.4th at p. 764, fn. 3 [evidence was sufficient to support requisite direct act for attempted robbery conviction where defendant "went armed to the scene, placed a mask over his face, [and] waited in hiding moments before his victim's approach," even though the defendant was never in close proximity to either victim and made no demand for money]; accord, *People v. Sanchez, supra,* 63 Cal.4th at p. 470 [summarizing *Bonner* with approval and finding sufficient evidence of attempted robbery where defendant and others were armed, arrived at a coffee shop, positioned a car for a quick getaway and actually entered the shop, but left and lingered until the proprietor called police].) That S.A. declined to act on Macias's threat and did not hand over his money does not change the result. As stated, the crime of attempted robbery does not require proof the defendant put the victim in a state of fear or complete the crime.

In *People v. Anderson, supra,* 1 Cal.2d 687, cited by Macias, the court stated that the "[d]efendant's conduct in concealing the gun on his person and going to the general vicinity of the . . . theater with intent to commit robbery may, for present purposes, be classified as mere acts of preparation." (*Id.* at p. 690.) However, the requisite overt act took place when the defendant then entered the theater and raised his gun to the person in the ticket office.

9

(*Ibid*.)  Like *Anderson*, Macias did not merely arm himself and place himself in the general vicinity of the liquor store, he went ahead and approached S.A. to demand money using threats to damage S.A.'s truck tires if he did not hand it over.

Nor was it necessary for Macias to display his knife in a menacing manner to S.A. before or while asking for money and making his threats, as Macias contends.  In *People v. Bonner, supra*, 80 Cal.App.4th 759, it was not necessary for the defendant to show his victims his gun, or even get in close proximity to them, for this court to find an overt act toward a commission of robbery had occurred.  (Accord, *People v. Sanchez, supra*, 63 Cal.4th at p. 470.)  Here, as in *Bonner*, we hold substantial evidence supports the jury's verdict for attempted robbery.

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.