# FOR PUBLICATION



**FILED**
Oct 11 2013, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NICHOLAS T. OTIS**
Newby, Lewis, Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT CORBIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 75A03-1209-CR-402 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Kim Hall, Judge
Cause No. 75C01-1204-FD-72

**October 11, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Robert Corbin ("Corbin") brings this interlocutory appeal from the Starke Circuit Court's denial of his motion to dismiss two counts of attempted child seduction. On appeal, Corbin claims that the facts alleged in the charging information are insufficient to support the charges alleged and that the trial court therefore erred in denying his motion to dismiss.

We find Corbin's conduct to be morally reprehensible. But we are also constrained to find that, as charged in the first count, Corbin did not take the substantial step required to amount to attempted child seduction. As to the second count, we are similarly constrained to find that Corbin again did not take the substantial step required to amount to attempted child seduction. In addition, the second count does not even charge a crime under Indiana law. We must therefore reverse and remand.

**Facts and Procedural History**

In March 2012, Corbin was a teacher and swimming team coach at Knox High School in Starke County, Indiana. At the time, A.H. was a sixteen-year-old sophomore at the high school. On March 17, 2012, A.H. received a message on Facebook from Corbin informing her that he did not accept students as Facebook friends. From that point on, however, Corbin sent A.H. several Facebook messages of a sexual nature. According to the State's allegations in the charging information, on March 21, 2012, Corbin sent A.H. a message asking the girl to "physically take care of" his sexual arousal. Appellant's App. p. 9. He also asked her to sneak out of the house after her father's girlfriend fell asleep so he could drive over and pick her up. The following day, Corbin sent A.H. a Facebook message asking her to send him a "kiss" photograph and also asked how large her breasts

2

were. Corbin also asked if A.H. could sneak out of the house so that he could "see her breasts in person[.]" Id.

Thereafter, A.H.'s aunt checked A.H.'s Facebook account and came across the messages between A.H. and Corbin. A.H.'s aunt contacted her brother, A.H.'s father, who then reported Corbin's behavior to the police on March 28, 2012. The police interviewed Corbin on March 31 and April 1, 2012. Corbin admitted to sending the messages to A.H. But when asked if it was "his intention to have [A.H.] come to his house to act on the messages sent[,] [h]e stated that they talked about it, but Corbin was unsure if it would happen." Id. at 7.

On April 3, 2012, the State charged Corbin as follows:

**COUNT I: ATTEMPTED CHILD SEDUCTION**
**I.C. 35-41-5-1, 35-42-4-7(k)(1) AND 35-42-4-7(k)(2)(A)(ii) / CLASS D**
**FELONY**

[O]n or about March 21, 2012, ROBERT CORBIN, being over eighteen (18) years of age . . . and a childcare worker employed by a school corporation attended by the victim, did knowingly and intentionally attempt to engage in fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, to-wit: that Robert Corbin sent Facebook messages to a student, A.H., asking her to "physically take care of it" because he was sexually aroused and he took a substantial step toward the crime by asking her to sneak out after the adult in the house was asleep and he would drive over to pick her up, and Robert Corbin admitted that he was sexually aroused by the messages being sent back and forth between him and A.H.; and further,

3

## COUNT II: ATTEMPTED CHILD SEDUCTION
### I.C. 35-41-5-1, 35-42-4-7(k)(1) AND 35-42-4-7(k)(2)(A)(ii) / CLASS D FELONY

[O]n or about March 22, 2012, ROBERT CORBIN, being over eighteen (18) years of age . . . and a childcare worker employed by a school corporation attended by the victim, did knowingly or intentionally attempt to engage in fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, to-wit: that Robert Corbin sent Facebook messages to a student, A.H., asking her to send him a "kiss" photograph and what size her breasts were and he took a substantial step toward the crime by asking if she could sneak out of the house so he could see her breasts in person and Robert Corbin admitted that he was sexually aroused by the messages being sent back and forth between him and A.H.

Appellant's App. p. 9.

On April 10, 2012, Corbin filed a motion to dismiss the charges, claiming that the facts as alleged failed to satisfy the elements of the crimes charged. The State responded on May 9, 2012, and the trial court held a hearing on the matter on June 6, 2012. The trial court entered an order denying Corbin's motion to dismiss on August 14, 2012. Corbin filed a motion on August 21, 2012 seeking to certify the trial court's order for interlocutory appeal. The trial court granted this motion on August 22, 2012, and this court accepted interlocutory jurisdiction over the appeal on October 29, 2012.[1]

### Standard of Review

Corbin brought his motion pursuant to Indiana Code section 35-34-1-4(a)(5), which provides that a trial court "may, upon motion of the defendant, dismiss the

---

[1] We held oral argument in this case on September 10, 2013, at the Indiana University Maurer School of Law in Bloomington Indiana. We would like to extend our thanks to the students, staff, faculty, and administration of the school for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

indictment or information upon any of the following grounds: . . . The facts stated do not constitute an offense." See Ceaser v. State, 964 N.E.2d 911, 918 (Ind. Ct. App. 2012) ("an information may be dismissed if the facts stated in the information do not constitute an offense."), trans. denied. We generally review a trial court's denial of a defendant's motion to dismiss for an abuse of discretion. Id. However, to the extent that the question at issue is one of a matter of law, this is a question we review *de novo*. See Adams v. State, 960 N.E.2d 793, 797 (Ind. 2012) ("Because a question of statutory interpretation constitutes a question of law, we review it *de novo*.").

## I. The "Age of Consent" and Child Seduction

Generally speaking, the "age of consent" in Indiana is sixteen. See Ind. Code § 35-42-4-3 (defining sexual conduct with a child under the age of fourteen as the crime of child molesting); Ind. Code § 35-42-4-9 (defining sexual conduct with a child at least fourteen but less than sixteen years of age as the crime of sexual misconduct with a minor); Ind. Code § 35-42-4-6 (criminalizing the solicitation of a child to engage in sexual activity if the child is under the age of sixteen); Ind. Code § 35-42-4-5 (criminalizing vicarious sexual gratification involving a minor and fondling in the presence of a minor, defined as a person under the age of sixteen).

There are, however, several exceptions to this general rule of consent at the age of sixteen. For example, possession or production of pornography depicting a child under the age of eighteen is criminalized by Indiana Code section 35-42-4-4. At issue in the present case is another exception to this general rule, the Child Seduction statute, which provides in relevant part:

If a person who:
    (1) is at least eighteen (18) years of age; and
    (2) is:
        (A) the:
            (i) guardian, adoptive parent, adoptive grandparent, custodian, or stepparent of; or
            (ii) *child care worker*[2] *for*; or
        (B) a military recruiter who is attempting to enlist;
    a child at least sixteen (16) years of age but less than eighteen (18) years of age;
engages with the child in sexual intercourse, deviate sexual conduct (as defined in IC 35-31.5-2-94),[3] *or any fondling or touching* with the intent to arouse or satisfy the sexual desires of either the child or the adult, the person commits child seduction, a Class D felony.

Ind. Code § 35-42-4-7 (emphasis added). Thus, if an adult employee of a school corporation touches or fondles a child at least sixteen but under eighteen years of age who attends that school corporation with the intent to arouse or satisfy the sexual desires of either the child or the employee, then the employee commits Class D felony child seduction.

## II. Criminal Attempt

Here, because A.H. was sixteen years old at the time of the communications alleged in the charging information, Corbin could not be charged with child solicitation. See I.C. § 35-42-4-6. Instead, Corbin was charged with attempted child seduction under Indiana Code Section 35-42-4-7. The attempt statute explains that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime,

---

[2] A "child care worker" is defined to include "a person who . . . is employed by a school corporation attended by a child who is a victim of a crime under this chapter." I.C. § 35-42-4-7(d)(2).

[3] This statute defines sexual deviate conduct as: "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-31.5-2-94.

he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1. For purposes of the attempt statute, a "substantial step" is any overt act beyond mere preparation and in furtherance of intent to commit an offense. Collier v. State, 846 N.E.2d 340, 344 (Ind. Ct. App. 2006).

The question of whether a defendant has taken a substantial step toward the commission of a crime is generally a question of fact to be decided by the trier of fact based on all the particular circumstances of the case. Id. However, in other cases, what constitutes attempt may be decided as a matter of law. See, e.g., Ward v. State, 528 N.E.2d 52, 55 (Ind. 1988) (concluding that evidence most favorable to the verdict failed, as a matter of law, to establish that the defendant committed attempted child molesting); Collier, 846 N.E.2d at 344 (concluding that defendant's undisputed behavior did not, as a matter of law, constitute a substantial step toward the commission of the crime of murder); State v. Kemp, 753 N.E.2d 47, 51 (Ind. Ct. App. 2001) (affirming trial court's dismissal of charges against defendant where facts alleged did not, as a matter of law, constitute attempted child molesting). Because of the procedural posture of this case, we are called upon to review whether Corbin's conduct amounted to a substantial step toward commission of the crime charged as a matter of law.

In determining whether an attempt has occurred, the focus should be on what acts have been completed, not what remains to be done, and the acts completed by the defendant must be "strongly corroborative of the firmness of the defendant's criminal intent." Collier, 846 N.E.2d at 344 (citing Mitchem v. State, 685 N.E.2d 671, 676 (Ind.

1997)).  "[T]he liability of the defendant turns on his purpose as manifested through his conduct."  Id. (citing Zickefoose v. State, 270 Ind. 618, 623, 388 N.E.2d 507, 510 (1979)).

Our supreme court has described the requirement of a substantial step as a "minimal one."  State v. Van Cleave, 674 N.E.2d 1293, 1304 (Ind. 1996).  But as this court noted in Collier, "[h]ow conduct can simultaneously be described as both 'substantial' and 'minimal' is [a] dilemma."  846 N.E.2d at 344.  Even our supreme court has noted this dilemma, stating: "[d]efining what constitutes an attempt has always been a burden upon the common law, challenging even the most respected judges."  Ward , 528 N.E.2d at 53-54 (footnote omitted).

### III.  Solicitation as Attempt

An additional problem arises when the substantial step alleged to have been taken by the defendant consists only of solicitation.  Even a cursory review of the extant case law illustrates the difficult issues that courts face when considering this issue.

A. *Ward v. State*

Our supreme court addressed the issue of solicitation as attempt in Ward v. State, in which the court considered the sufficiency of the evidence supporting the defendant's convictions for two counts of attempted child molesting.  In the first incident, the defendant approached an eleven-year-old boy, D.D., on the street and asked if the boy would like Ward to perform fellatio on him.  Ward told D.D. that the sheriff would "get D.D. in trouble" and stated that the sheriff was a "pervert."  Id. at 55.  Ward asked D.D. three times if he wanted to have Ward perform fellatio on him.  The boy refused and later told the sheriff about the incident.

8

To verify D.D.'s story, the sheriff asked R.C., a fifteen-year-old boy, to approach Ward and engage in casual conversation but not to broach the subject of sex. R.C. found Ward and greeted him, and Ward responded by offering the boy a beer. R.C. declined, but Ward then told R.C. that, if he would keep the incident a secret, he would perform fellatio on him. Ward then vaguely suggested that if R.C. were in Ward's nearby hometown, he should visit Ward. Ward was later convicted for two counts of attempted child molesting.

On appeal, our supreme court set forth a two-part test to apply in considering whether solicitation constitutes attempt:

> We adopt two separate tests to determine when solicitation may be a substantial step. The first test is fairly mechanical and the second involves an assessment of the wrong which the legislature seeks to sanction.
>
> *Three–Part Test for Solicitation.* First, a solicitation may be a substantial step only when: 1) the solicitation takes the form of urging; 2) the solicitation urges the commission of the crime at some immediate time and not in the future; and 3) the cooperation or submission of the person being solicited is an essential feature of the substantive crime.
>
> *Nature of the Crime.* Second, if those findings are made, the court must consider the specific crime, and the wrongful human conduct that the legislature sought to sanction. One commentator has stated an eloquent principle about the role which the nature of the crime plays in determining what a substantial step is: . . . the more serious the crime attempted or the greater the menace to the social security from similar efforts on the part of the defendant or others, the further back in the series of acts leading up to the consummated crime should the criminal law reach in holding the defendant guilty for attempt.

Id. at 54.

Applying this test to the facts before it, the court first noted that Ward initiated the contact with D.D., solicited him three times "in a context that amounted to urging or

9

persuasion rather than mere invitation," and noted that Ward had urged the commission of the crime immediately. Id. at 55. Thus, the court concluded that "[t]he pursuit, the approach, the multiple requests, and Ward's initial statements to D.D., which were provocative and authoritative, all indicated that Ward's solicitation was a substantial step toward committing child molesting." Id. The court also noted that child molesting required the cooperation or submission of the child being solicited. Thus, the court summarized:

> The solicitation of D.D., therefore, was: (1) substantially in the nature of persuasion, (2) aimed at immediate commission of a crime, and (3) aimed at committing an offense dependent on cooperation of the one being solicited. The presence of these three features and the relatively serious nature of child molesting as a crime suggests that this set of acts may be fairly characterized as an attempt.

Id.

With regard to R.C., however, the court came to the opposite conclusion. The court noted that Ward did not follow or approach R.C. Instead, it was R.C. who sought out and approached Ward. Ward also only solicited R.C. once, causing the court to conclude that Ward's solicitation failed to be an urging or persuasion. And Ward's conversation with R.C. was, at least in part, directed to future opportunity as opposed to immediate sexual activity. "Thus, two of the elements which suggest categorizing the solicitation of D.D. as an attempt [we]re not applicable in the case of R.C." Id. The court accordingly held that the evidence was insufficient to establish that Ward attempted to molest R.C. Id.

10

*B. Benson v. State*

The Ward test was subsequently applied by our court in Benson v. State, 574 N.E.2d 934 (Ind. Ct. App. 1991), in which the defendant drove a fifteen-year-old girl to his home so that the girl could visit with the defendant's stepchildren. While in the car, Benson told the girl that he wanted to "make love" to her. Id. at 934. When they got to Benson's home, both he and his wife repeatedly attempted to persuade the girl to have sexual intercourse with them. But the girl refused. Later, Benson and his wife told the girl that they were "disappointed" in her, and the wife stroked the girl's leg. Id. When the girl became upset, Benson gave her pills and wine, causing her to become dizzy. Benson's wife then grabbed the girl's legs and tried to force her to have sexual intercourse, but the girl broke free. Benson and his wife then told the girl that they would "drop the subject" for the rest of the night, but at one point during the night, Benson asked the girl to lie down next to his wife. Id. The next day, the girl again refused an offer to have sex with Benson, his wife, and a third party.

On appeal from his conviction for, among other things, attempted child molesting, Benson claimed that, because the behavior upon which his conviction for attempted child molesting was based was solely verbal, the State had failed to prove that he engaged in a "substantial step" toward the crime of child molesting. Applying the test from Ward, the Benson court dealt summarily with this argument:

> [Benson] initiated the contact with D.S. and, along with his wife, made repeated attempts to persuade [her] to engage in sexual intercourse. The solicitation was aimed at immediate commission of the crime, and, as the Ward court recognized, the substantive crime of child molesting is a two-party offense requiring the cooperation or submission of the child being

11

solicited. Th[is] evidence was sufficient to show that [Benson] engaged in conduct constituting a substantial step toward commission of child molesting.

Id. at 935 (citation omitted).

C. *Shahan v. State*

In Shahan v. State, 669 N.E.2d 1012 (Ind. Ct. App. 1996), the defendant was convicted of attempted child molesting based on his sexual solicitation of his own daughter. In that case, Shahan approached his daughter and asked her to touch his penis, but she refused. He then stated that, if she did not touch it, he would have to do so himself, but she still refused. On appeal, we affirmed and held that this was sufficient under Ward, noting that Shahan approached his daughter twice and requested that she "participate in the *immediate* gratification of his sexual desires." Id. at 1014 (emphasis added). The court also noted Shahan's persistence. And given Shahan's position of trust as the victim's father, the court held that "[h]is solicitation of his daughter may fairly be characterized as an *urging* that she fondle him." Id. (emphasis added). Thus, the court concluded that "the evidence [wa]s sufficient to support the determination that Shahan engaged in an overt act which constituted a substantial step toward the commission of child molesting."[4] Id.

---

[4]  Judge Barteau dissented, concluding as a matter of law that Shahan's solicitation did not constitute a substantial step toward the commission of the crime of child molesting. Id. at 1014 (Barteau, J., dissenting). Judge Barteau thought that Shahan's actions were more akin to the behavior by the defendant in Ward toward the second child in that case, noting that there was "but a single encounter, with no urging, no persuasion, and no exercise of inherent authority." Id. Thus, Judge Barteau concluded that Shahan's statements were a mere invitation. Id.

D. *Mettler v. State*

In Mettler v. State, 697 N.E.2d 502 (Ind. Ct. App. 1998), the defendant left a letter in an envelope on his eighteen-year-old daughter's bed. The envelope also contained a five dollar bill and one-half of a one hundred dollar bill. The letter solicited Mettler's daughter to submit to fondling and cunnilingus and promised her the other half of the hundred dollar bill if she complied. The daughter was frightened by the letter and told a friend about it, and the friend's stepfather informed the police. Mettler never spoke to his daughter about his sexual desires, never physically confronted her, and there was no further attempt at communicating to her after the letter. The State subsequently charged Mettler with attempted incest, and Mettler was convicted.

On appeal, Mettler claimed that his letter soliciting his daughter to commit incest was insufficient to constitute a substantial step toward commission of the crime. Applying the Ward test, the court concluded:

> Incest is a serious crime, and one which clearly is a menace to the moral good of society so that we would be more likely to find an attempt if the three-part test of Ward had been met. However, neither of the first two parts of that test have been met. *Mettler's one-time-only letter, in our opinion, does not constitute urging. Even if we were to concede urging, the invitation to the daughter was to come into the front room some night. This hardly can be classified as seeking immediate action.* Mettler's request is nothing more than one for submission to his sexual desires at some undefined future time.

Mettler, 697 N.E.2d at 503-04 (emphasis added). The court contrasted these facts with those in Ward, Benson, and Shahan and concluded that "[w]ithout question Mettler's conduct was depraved, disgusting, and despicable, but it did not rise to the level of an attempt to commit the crime of incest." Id. at 504. Therefore, the court reversed the

13

conviction.[5]  With these cases in mind, we now turn to Corbin's conduct as charged in the case before us.

### IV.  Corbin's Claim

On appeal, Corbin argues that, under our supreme court's two-part test from Ward, his conduct did not constitute a substantial step toward the commission of the crime of child seduction.[6]  In considering this claim, we are mindful that we test the sufficiency of a charging information by assuming the facts alleged in the information are true.  State v. Isaacs, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003).  We will consider each count of the charging information in order.

A. *Count I*

Count I alleged that Corbin sent A.H. Facebook messages asking her to "physically take care of" his sexual arousal and took a substantial step toward the commission of child seduction by asking A.H. to sneak out of her house after the adult in the house fell asleep where he would pick her up.  Appellant's App. p. 9.  The question we now consider is whether this alleged behavior, taken as true for purposes of our

---

[5]  Judge Mattingly (now Judge May) dissented, concluding that the letter did constitute urging and that, under the facts of that case, the trier of fact could reasonably conclude that Mettler was soliciting sex from his daughter in the near future.  See id. at 505 (Mattingly, J., dissenting).

[6]  The State notes that the charging information cited the relevant statute, set forth the date and county where the offense was alleged to have occurred, and cited the bare factual allegations that tracked the statutory language, i.e., that Corbin attempted to engage in fondling or touching with A.H. with the intent to arouse or gratify the sexual desires of either Corbin or A.H.  Anything else, the State argues, is mere surplusage and should not form the basis of a motion to dismiss.  However, the case cited by the State in support of its argument, State v. King, 502 N.E.2d 1366 (Ind. Ct. App. 1987), is distinguishable.  The core holding in King was that that "[t]he sufficiency of an information is tested by this Court by taking the facts alleged in the information as true."  Id. at 1368.  The defendant in King was attempting to litigate a factual issue by submitting affidavits in support of his motion to dismiss, which was improper.  Id. at 1370.  Here, however, Corbin attacks the sufficiency of the charging information without reference to affidavits, and we take the facts alleged as true.

14

review, was sufficient, under the test set forth in Ward, to constitute a substantial step toward the crime of child seduction.

1. *Part One of the Ward Test*

The first part of the Ward test is composed of three elements: (1) solicitation in the form of urging; (2) solicitation urging the commission of the crime at some immediate time and not in the future; and (3) cooperation or submission of the person solicited being an essential feature of the substantive crime. We address these in order.

The first prong of the test is whether the solicitation took the form of urging or persuasion rather than mere invitation. See Ward, 528 N.E.2d at 54. As alleged in Count I of the charging information here, Corbin "asked" A.H. to physically "take care of" his sexual arousal and "asked" her to sneak out of the house when "the adult in the home was asleep and he would drive over to pick her up." Appellant's App. p. 9. Although Corbin does not develop an argument on this prong of the Ward test, his requests, as they are charged, appear to be simply an invitation.

Even if we were to conclude that, from his position as a teacher, his requests to A.H. could be considered urging or persuasion, Corbin's actions as they are alleged in the charging information did not urge the immediate commission of the crime. Indeed, Corbin focuses his argument on this second step of the first portion of the Ward test. Corbin notes that his communications to A.H. were not made in the girl's physical presence. Thus, he argues that he did not have the capacity to immediately commit the crime. He also claims that his communications were about future conduct, not about immediate conduct. This was a key factor distinguishing the behavior of the defendant in

15

Ward vis-à-vis the two children involved in that case. See Ward, 528 N.E.2d at 55 (noting that defendant's statements to second child involved future conduct). We agree with Corbin that his conduct as charged did not urge the immediate commission of a crime.

Unlike the defendants in Ward, Benson, and Shahan, in the case before us, Corbin did not solicit A.H. face-to-face; thus there was little opportunity for *immediate* commission of the crime. And all of Corbin's solicitations asked A.H. to leave her house at some point in the future, not immediately. Corbin's solicitations are more akin to the letter left by the defendant in Mettler, which the court held did not urge immediate commission of incest. Certainly Mettler, who was in the same house with his daughter when he left the soliciting letter, was in more of a position to immediately commit the crime of incest than was Corbin in a position to immediately commit the crime of child seduction. While we do not preclude the possibility that a non-face-to-face communication could urge the commission of the crime immediately,[7] as charged in Count I, Corbin did not even leave his home to meet with A.H. Under these facts and circumstances, Corbin's solicitations were not "aimed at immediate commission of a crime." Ward, 528 N.E.2d at 55.

The third step in the first portion of the Ward test is whether the cooperation or submission of the person being solicited is an essential feature of the substantive crime.

---

[7] An example that was discussed at oral argument in this case involved an adult text messaging a child while sitting in a car parked nearby the child's house, urging the child to immediately leave the house to meet with the adult for sexual activity.

16

This is certainly true regarding the crime of child seduction, which is a two-party offense requiring the cooperation or submission of the child. Cf. Ward, 528 N.E.2d at 55 (noting that the substantive crime of child molesting is a two-party offense, which requires the cooperation or submission of the child being solicited). Here again, Mettler is instructive. A.H. was in a far stronger position to resist cooperating or submitting than Mettler's daughter was, living as she did with Mettler when Mettler solicited her for incest. We simply cannot say that A.H. was in a position or location to immediately cooperate with or submit to Corbin's solicitations.

As charged in Count I, at least, Corbin clearly asked A.H. to engage in sexual activity. But even if his requests could be considered to be urging or persuasion, they were not "aimed at *immediate* commission of a crime." Ward, 528 N.E.2d at 55 (emphasis added). In addition, the cooperation or submission of the victim is an essential feature of the substantive crime under Ward, and A.H. was never in a position or location to cooperate with or submit to Corbin's solicitations.

For all of these reasons, under the first part of the Ward test, Corbin's actions of solicitation, as alleged in Count I, do not constitute a substantial step toward the commission of the substantive crime of child seduction.[8]

---

[8] Because we hold that Corbin's conduct as charged in Count I does not constitute attempted child seduction as a matter of law, we need not consider the nature of the crime under Ward. Under the second prong of the Ward test: "the court must consider the specific crime, and the wrongful human conduct that the legislature sought to sanction." Id. at 54. "The more serious the crime attempted or the greater the menace to the social security from similar efforts on the part of the defendant or others, the further back in the series of acts leading up to the consummated crime should the criminal law reach in holding the defendant guilty for attempt." Id. Although a teacher engaging in sexual activity with a student is a serious issue, and obviously immoral and deplorable behavior, our General Assembly has seen fit to criminally sanction such conduct only as a Class D felony. This is in contrast to the crime of child

17

## 2. *Attempt under Kemp v. State*

Although focused on the crime of attempted child molesting, Kemp v. State, 753 N.E.2d 47 (Ind. Ct. App. 2001), trans. denied, superseded by statute on other grounds as noted in LaRose v. State, 820 N.E.2d 727, 732 (Ind. Ct. App. 2005), provides good direction to us as we consider the crime of attempted child seduction.[9] In Kemp, a detective posed online as a fourteen-year-old girl with the alias "Brittney4U2." Id. at 51. Kemp initiated an online chat with "Brittney," who told him to "come on down," and suggested a place to meet. Id. at 51-52. Kemp agreed and drove to the proposed meeting place, where he was arrested. The police found a package of condoms in Kemp's vehicle. Kemp was later convicted of, *inter alia*, attempted child molesting.

On appeal, this court reversed, noting that "[t]he overt act must reach far enough towards accomplishing the attempted crime as to amount to commencement of consummation of the crime. The overt act must go beyond preparation and planning." Id. at 50. We concluded that the substantial step alleged by the State—agreeing to meet "Brittney," driving to the meeting place, and bringing condoms—was mere preparation and planning, and insufficient as a matter of law to constitute a substantial step sufficient

---

molesting, which can be a Class A felony, depending on the circumstances. See Ind. Code § 35-42-4-3. Indeed, the Ward court noted that the crime of child molesting was a serious crime that could even act as an aggravating factor supporting the imposition of the death penalty. 528 N.E.2d at 55 (citing Ind. Code § 35-42-1-1(2); Ind. Code § 35-50-2-9(b)(1)). This, the court held, shows that child molesting was a "sufficiently serious crime to justify drawing a fairly early line to identify and sanction behavior as an attempt." Id. This is not true of the crime of child seduction, and future courts should be less inclined to go further back in the series of events leading up to the consummated crime in holding the defendant guilty for attempt.

[9] The author of the current opinion concurred in Kemp, and the Kemp opinion was written by Judge Baker, a member of the current panel.

18

to constitute attempt. Id. By any account, Kemp's conduct went substantially further than the conduct charged to Corbin in Count I, and yet it was still insufficient as a matter of law to constitute a substantial step toward the commission of the underlying crime.[10] In like manner, Corbin's conduct, as alleged in Count I, is legally insufficient to establish that he took a substantial step toward the commission of the crime of child seduction.

B. *Count II*

An additional problem surfaces when we consider Count II, which alleged that Corbin sent Facebook messages to A.H. in which he asked her to send him a "kiss" photo, asked what size her breasts were, and asked if she could sneak out of the house so that he could see her breasts in person. Even if we consider Corbin's requests as persuasion or urging, his statements were not aimed at immediate commission of the crime, but instead referred to some unspecified time in the future. And again, although cooperation or submission of the victim is an essential feature of the crime, A.H. was never in a position or location to cooperate with or submit to Corbin's communications.

---

[10] Effective July 1, 2014, Public Law 247-2013 § 5 amends the attempt statute to further provide that:

> [A] person engages in conduct that constitutes a substantial step if the person, with the intent to commit a sex crime against a child or an individual the person believes to be a child:
> (1) communicates with the child or individual the person believes to be a child concerning the sex crime; and
> (2) travels to another location to meet the child or individual the person believes to be a child.

This new statute might well be a legislative response to our decision in Kemp. It is important to note that even if the statute had been in effect to apply to Corbin, Corbin never travelled to meet with A.H. and therefore would not have committed a crime. We also notice that our General Assembly has considered these issues and has not yet chosen to criminalize soliciting sex from a child who is at least sixteen years of age.

But an additional problem surfaces when we review the allegations in Count II. Although neither raised by Corbin nor briefed by either party, the behavior that Corbin is alleged to have attempted in Count II does not even fall within the definition of child seduction. Corbin's failure to raise this argument does not prevent our consideration of this issue, as conviction for a non-existent offense would be fundamental error. See Vandeventer v. State, 459 N.E.2d 1221, 1222 (Ind. Ct. App. 1984) (citing Hargis v. State, 220 Ind. 429, 44 N.E.2d 307 (1942); Moon v. State, 267 Ind. 27, 366 N.E.2d 1168 (1977)).

Corbin was charged in Count II with asking A.H. to send him a "kiss" picture, asking what size her breasts were, and asking if he could meet her so that he could see them in person. Although this is extremely disturbing and morally reprehensible behavior on the part of a teacher, asking for a "kiss" picture and asking what size a girl's breasts are do not to fall within the ambit of the crime of child seduction, which criminalizes (1) sexual intercourse, (2) criminal deviate conduct, or (3) touching or fondling with the intent to arouse or satisfy sexual desires, when done by a teacher to a student. See I.C. § 35-42-4-7. Under the plain language of this statute, simply looking at the breasts of a sixteen-year-old student is not criminal conduct. Thus, even if Corbin's actions did constitute attempt, what he is alleged to have attempted in Count II does not constitute child seduction. Whether Corbin's conduct as alleged in Count II should be criminalized is, of course, a question beyond our purview. See Kemp, 753 N.E.2d at 50 (noting that even if an act falls within the spirit of a criminal statute, the act will not constitute an offense unless it also falls within the letter of the statute, and further noting

20

that criminal statutes are strictly construed against the State and may not be enlarged by construction, implication, or intendment beyond the fair meaning of the words used).

## Conclusion

The behavior alleged in the charging information is deplorable and immoral, and our decision today should not be read in any way to condone Corbin's conduct. Yet, we are bound to narrowly construe criminal statutes in order to protect the constitutional rights of all of our citizens. Here, the charging information at issue alleged that Corbin asked A.H. to engage in sexual behavior at some non-immediate time and did so remotely, over the Internet, which would make immediate commission of the crime difficult, at the very least. Applying the Ward test to the facts alleged in the charging information, we are constrained to conclude that Corbin's Internet-based solicitations to A.H. did not constitute a substantial step toward the crime of child seduction. Indeed, as charged, Count II does not even allege criminal conduct on the part of Corbin. Accordingly, we reverse the trial court's order denying Corbin's motion to dismiss and remand with instructions to grant the motion.

Reversed and remanded.

BAKER, J., and MAY, J., concur.